In Re: Condemnation by the Commonwealth of Pennsylvania, Department of Transportation of Right of Way for Legislative Route 1088, Section A10, a Limited Access Highway in Towanda and North Towanda Townships and the Borough of Towanda. Charles J. and Janice M. Dannemann, Appellants.

Argued March 5, 1979, before Judges CRUMLISH, JR., ROGERS and MACPHAIL, sitting as a panel of three.

*Basil C. Clare,* for appellants.

*Peter J. Comerota,* Special Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General-Chief Counsel, for appellee.

OPINION BY JUDGE MACPHAIL, July 26, 1979:

This is an appeal from an order of the Court of Common Pleas of Bradford County denying Charles J. and Janice M. Dannemanns' (Plaintiffs) motions for judgment N.O.V. and for a new trial.

On June 10, 1971, the Commonwealth of Pennsylvania, Department of Transportation (Commonwealth) filed a Declaration of Taking, appropriating 42.849 of Plaintiffs' original 320 acres and temporarily utilizing 0.1722 acres in the course of construction of Legislative Route 1088, Section A10, known as the Towanda Bypass. The taking severed the original tract leaving two unconnected parcels. At the time of taking, the property was being utilized as a residence with some farming. Included within the take was the main barn of the farm and approximately 22 acres of gravel land.

The Board of Viewers awarded damages in the amount of $81,500. Both parties appealed. The case was tried on June 15, 1977 and a jury rendered a verdict of $61,000.

In reviewing the action by a trial court in dismissing motions for a new trial and judgment N.O.V. in an eminent domain case, we must consider whether the lower court committed an abuse of discretion or error

of law, whether the verdict was against the clear weight of the evidence and whether the judicial process has worked a serious injustice. *Croop Estate v. Department of Transportation,* 38 Pa. Commonwealth Ct. 305, 393 A.2d 41 (1978).

Plaintiffs argue that the lower court erred (1) in refusing to allow cross or direct examination of a valuation witness for the purpose of placing values on individual elements of the taking, (2) in refusing Plaintiffs' request that the jury be charged that it must place itself in the position of a potential purchaser of the tract in determining the value thereof, (3) refusing Plaintiffs' point for binding instructions as stated by Plaintiffs and (4) in excluding evidence as to the amount of gravel taken from Plaintiffs' land which was used in the highway construction and the effect that the presence of gravel on Plaintiffs' land had upon construction bids for the highway. Finally, Plaintiffs contend that the Commonwealth was guilty of fraud in employing knowledge of the gravel to secure a low construction bid, but witholding that same knowledge from its appraisers.

Plaintiffs rely upon this Court's abrogation of the unit rule as found in *North Side Deposit Bank v. Urban Redevelopment Authority,* 1 Pa. Commonwealth Ct. 274, 274 A.2d 215 (1971), to substantiate their argument that an appraiser may be asked to testify as to the value assigned the separate elements he considered in arriving at his estimate of the market value of the subject tract before and after taking. One of Plaintiffs' valuation witnesses was asked what elements he considered in fixing the before and after value of the subject property. His response was that he divided the property into two portions in arriving at the "before value" and that one of these was a five acre parcel (including certain improvements) upon which the witness

said he placed a value of $62,000. The Commonwealth objected to the answer and the trial court sustained the objection. The *North Side Deposit Bank* case, *supra,* interpreted Section 705 of the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-705, and held that the so-called "unit rule" was thereby abolished. However, our Court also said in that case that where the issue involved is not allocation of damages but rather what items can be looked to in determining damages, the former rule applied that an appraiser could not give a break-down of the dollar value assigned to each element he considered in determining his estimates of value. In its opinion, this Court distinguished cases such as *Gilleland v. New York State Natural Gas Corp.,* 399 Pa. 181, 159 A.2d 673 (1960) where it was held that a property must be valued as a whole in its present condition and not as speculatively divided into lots, and *Werner v. Department of Highways,* 432 Pa. 280, 247 A.2d 444 (1968) where it was held that it was permissible for a witness to testify to the amount of sub-surface coal lost through condemnation but not the value thereof.

We conclude that the trial court correctly excluded the dollar value of the two parcels which Plaintiffs' expert witness considered in arriving at his before and after market values. The witness testified initially that arriving at his estimate of damages he used the comparable sales or market data approach. Although the witness could certainly consider in his own mind the value of the subject property as two separate parcels, he could not testify as to the actual dollar value he assigned to each of those tracts. Under our holding in *North Side Deposit Bank,* such testimony would be purely speculative.

Plaintiffs requested the trial judge to charge the jury that they must place themselves in the position of

a potential purchaser in determining value, as in *Werner v. Department of Highways, supra.* While such language was used in *Werner,* there is nothing in the opinion which indicates that a charge in that precise language was mandated in eminent domain cases. We have carefully reviewed the trial judge's comprehensive instructions to the jury as to the manner by which they should determine the fair market value of the subject tract. We conclude that the charge considered as a whole was correct and that it embodied the substance if not the precise language requested by Plaintiffs.

Plaintiffs also requested the trial judge to charge the jury that the verdict must be for the Plaintiffs "in the amount established by their appraisals." While the requested language appears to be so clearly erroneous as to warrant no further discussion, the Plaintiffs' contention is that since the Commonwealth's appraisers admittedly had not taken into consideration the gravel deposits on the Plaintiffs' land, their testimony as to fair market value thereof was wholly incompetent. While there can be no doubt that mineral deposits are an element of value which must be considered in determining the fair market value of Plaintiffs' land, *Werner v. Department of Highways, supra,* the fact that a particular expert witness failed to consider that element does not render that testimony incompetent per se, but depending upon the circumstances, most often goes to the weight to be accorded that testimony by the jury. Here both the Commonwealth's appraisers admitted that they were not aware of the gravel deposits on Plaintiffs' land. Both of those appraisers testified that before they would concede that the presence of such deposits would change their opinion that the highest and best use of Plaintiffs' property would be for residential development, they would have to know much more about the extent

of the deposits, the cost of removal, etc. What is obvious, of course, is that the highest and best use of Plaintiffs' property could not be for gravel production *and* residential development. It must be one or the other. The circumstances in this case are clearly distinguishable from those present in the case of *Sisters of the Blessed Sacrament v. Philadelphia*, 413 Pa. 348, 197 A.2d 223 (1964), which Plaintiffs relied upon. In that case, the condemnor's sole value witness testified that the condemned property was enhanced in value because a sewer line would be available to lot owners as soon as the sewer line in the street was installed. Other witnesses for the condemnor testified that actually a city ordinance would be required before branch sewers could be authorized. Obviously, the value witness had no valid basis for his estimate of damages. In the case now before us, the condemnor's witnesses simply did not believe that even if they had known of the presence of gravel deposits, it would have affected their estimates of value.

Next, Plaintiffs argue that the trial judge erred when he excluded testimony as to the amount of gravel actually removed from the subject property by the contractor for the right of way, and testimony that knowledge of the existence of the gravel deposits was the leading factor which induced that contractor to submit the lowest bid for the construction of the highway. Plaintiffs contend that the amount of gravel actually used would show the land's potential for gravel deposits as well as increase its value in the minds of the jurors. Plaintiffs' argument misses the mark. The trial judge correctly admitted Plaintiffs' testimony concerning the estimated amount of gravel located within the right of way. This he was required to do under *Werner v. Department of Highways, supra.* This is an element of value which the jury was entitled

to consider. However, how much gravel was actually extracted by the contractor in the course of construction and how the presence or absence of gravel actually affected that contractor's bid is clearly irrelevant in a determination of damages in this case.

With respect to Plaintiffs' final argument that the Commonwealth was guilty of fraud because it allegedly withheld the evidence of gravel deposits from its expert appraisers, we note that this issue was not raised in the court below and therefore we will not consider it here. *Brunswick Corp. v. Key Enterprises, Inc.*, 431 Pa. 15, 244 A.2d 658 (1968) and *Commonwealth v. Robinson*, 7 Pa. Commonwealth Ct. 521, 300 A.2d 913 (1973). Moreover, the record discloses that the *Plaintiffs* did not inform the Commonwealth's appraisers of these deposits in the extensive interviews both appraisers conducted with them. *Edwards v. Department of Environmental Resources*, 14 Pa. Commonwealth Ct. 371, 322 A.2d 138 (1974).

Order affirmed.

ORDER

AND Now, this 26th day of July, 1979, the order of the Court of Common Pleas of Bradford County dated January 23, 1978 is hereby affirmed.